J-A05006-19

2019 PA Super 324

| | | |
|---|---|---|
| JOYCE E. KARDOS, EXECUTRIX OF THE ESTATE OF NICHOLAS J. KARDOS, DECEASED, AND JOYCE E. KARDOS, IN HER OWN RIGHT | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| ARMSTRONG PUMPS, INC.; ATLAS INDUSTRIES, INC.; BADGER METER, INC.; BALTIMORE & OHIO RAILROAD, CHESAPEAKE & OHIO RAILROAD, THE CHESSIE SYSTEM RAILROAD, AND CSX TRANSPORTATION, INC. AS SUCCESSOR IN INTEREST TO ALL THE FOREGOING; BLUE M; CARRIER CORPORATION; CASHCO, INC.; CBS CORPORATION, A DELAWARE CORPORATION, F/K/A VIACOM INC., SUCCESSOR BY MERGER TO CBS CORPORATION, A PENNSYLVANIA CORPORATION, F/K/A WESTINGHOUSE ELECTRIC CORPORATION; CHEVRON U.S.A. PRODUCTS COMPANY, NOW KNOWN AS CHEVRON PRODUCTS COMPANY; COOPER INDUSTRIES, LLC IN ITS OWN RIGHT AND AS SUCCESSOR-IN-INTEREST TO CROUSE HINDS COMPANY AND AS SUCCESSOR-IN-INTEREST TO MCGRAW-EDISON COMPANY; CRANE CO.; DEZURIK, INC.; THE FAIRBANKS COMPANY; FLOWSERVE US, INC., SOLEY AND AS SUCCESSOR TO ROCKWELL MANUFACTURING COMPANY, ROCKWELL VALVES, INC., EDWARD VOGT VALVE COMPANY, AND HILLS-MCCANNA; FORT KENT HOLDINGS, INC., IN ITS OWN RIGHT AND AS SUCCESSOR-IN-INTEREST TO DUNHAM BUSH, INC. AND WARREN | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | |

WEBSTER & CO.; GOULDS PUMPS, INC.; GRINNELL LLC; HAMMOND VALVE COMPANY; HEXAGON MANUFACTURING INTELLIGENCE, IN ITS OWN RIGHT AND AS SUCCESSOR IN INTEREST TO BROWN & SHARPE; HONEYWELL, INC.; I.U. NORTH AMERICA, INC., AS SUCCESSOR BY MERGER TO THE GARP COMPANY, FORMERLY KNOWN AS THE GAGE AND SUPPLY COMPANY; IMO INDUSTRIES, INC., F/K/A IMO DELAVAL TURBINE, INC., DELAVAL TURBINE, INC., DELAVLCO CORPORATION; INDUSTRIAL HOLDINGS CORPORATION F/K/A CARBORUNDUM COMPANY; INGERSOLL-RAND; INVENSYS; ITT CORPORATION, F/K/A ITT INDUSTRIES; JENDOCO CONSTRUCTION; LEEDS & NORTHRUP COMPANY; LIMBACH COMPANY; M.S. JACOBS & ASSOCIATES, INC.; METROPOLITAN LIFE INSURANCE COMPANY, A/K/A METROPOLITAN INSURANCE COMPANY; MILTON ROY COMPANY; MINE SAFETY APPLIANCE COMPANY; OWENS-ILLINOIS, INC.; PATTERSON KELLY CORPORATION, A/K/A HARSCO CORPORATION; ROCKWELL AUTOMATION, INC., IN ITS OWN RIGHT AND AS SUCCESSOR-IN-INTEREST TO ALLEN BRADLEY; SAFETY FIRST INDUSTRIES, INC., IN ITS OWN RIGHT AND AS SUCCESSOR-IN-INTEREST TO SAFETY FIRST SUPPLY, INC.; SPIRAX SARCO, INC.; SQUARE D. COMPANY; THE CLARK CONTROLLER COMPANY; TRANE U.S. INC. F/K/A AMERICAN STANDARD, INC.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

     Appellees          No. 62 WDA 2018

Appeal from the Final Order Entered December 6, 2017
In the Court of Common Pleas of Allegheny County
Civil Division at No(s):   No. G.D. 16-003521,
No. G.D. 16-003523

BEFORE:   GANTMAN, P.J.E., SHOGAN, J., and MURRAY, J.

OPINION BY GANTMAN, P.J.E.:                    FILED OCTOBER 28, 2019

Appellant, Joyce E. Kardos, Executrix of the Estate of Nicholas J. Kardos, Deceased, and Joyce E. Kardos, in her own right, appeals from the final order entered in the Allegheny County Court of Common Pleas that disposed of the remaining claims against the remaining defendants in these cases consolidated at Docket No. G.D. 16-003521.  Specifically, Appellant challenges the trial court's preclusion order of December 12, 2016, and the summary judgments entered on August 9, 2017, and August 18, 2017, in favor of Appellees, Armstrong Pumps, Inc., The Fairbanks Company ("Fairbanks"), Flowserve US, Inc. ("Flowserve"), Hammond Valve Company, Ingersoll-Rand, Patterson Kelly Corporation, a/k/a Harsco Corporation ("Patterson Kelly"), Rockwell Automation, Inc., in its own right and as successor-in-interest to Allen Bradley ("Rockwell Automation"), and Square D. Company ("Square D").[1]  We vacate the orders entering summary judgment in favor of Appellees, reverse the order precluding Mr. Kardos' affidavit and deposition testimony

_____

[1] Upon Appellant's praecipe, this Court issued a per curiam order on February 20, 2019, directing the Prothonotary to mark the case settled, discontinued, and ended as to Appellees Armstrong Pumps, Inc., and Hammond Valve Corporation, and to remove these Appellees as parties from this appeal.

from consideration at the summary judgment stage, and remand for further proceedings.

The relevant facts and procedural history of this case are as follows. In January 2016, doctors diagnosed Mr. Kardos with mesothelioma, a type of cancer caused by exposure to asbestos. On March 10, 2016, Mr. Kardos and Appellant filed a complaint against numerous manufacturers, suppliers, and users of asbestos products. Between July 11, 2016 and July 15, 2016, Appellees Armstrong Pumps, Flowserve, Ingersoll-Rand, Patterson Kelly, Rockwell Automation, and Square D filed motions for summary judgment based on lack of product identification. Further discovery ensued, including a jobsite inspection at Mr. Kardos' former place of employment, Gulf Research.

On September 12, 2016, Mr. Kardos executed an affidavit regarding his work at Gulf Research and his exposures to asbestos while employed there. On September 28, 2016 and September 30, 2016, Defendant Mahoning Valley Supply Co. noticed Mr. Kardos for two separate days of deposition. Defendants and Appellees deposed Mr. Kardos on October 17, 2016 and October 24, 2016; at the end of the second day, Defendants and Appellees noticed a third day of deposition, which occurred on October 26, 2016. The depositions consisted solely of cross-examination regarding Mr. Kardos' work history and his exposure to asbestos-containing products. During the three days of deposition, Appellees Armstrong Pumps, Inc., Flowserve, Ingersoll-Rand, Rockwell Automation, and Square D all began and finished their cross-

examinations; Appellees Fairbanks, Hammond Valve Company, and Patterson Kelly attended the deposition but did not question Mr. Kardos. Appellees and Defendants did not notice a fourth day of deposition. Mr. Kardos died on November 3, 2016. On November 14, 2016, Appellant was appointed as executrix of Mr. Kardos' estate and substituted as Plaintiff.

On December 5, 2016, Appellee Fairbanks filed a motion for summary judgment based on a lack of product identification; Appellee Fairbanks further argued the court should not consider Mr. Kardos' affidavit and deposition testimony because these documents were inadmissible hearsay. On December 5, 2016 and December 6, 2016, Appellees Square D and Rockwell Automation filed motions for summary judgment based on Mr. Kardos' lack of regular and frequent exposure to their products and failure to isolate the presence of asbestos in their products. On December 6, 2016, Appellee Hammond Valve Company filed a motion for summary judgment based on lack of product identification and also argued for the preclusion of Mr. Kardos' affidavit and deposition testimony. Appellant filed a response on December 7, 2016, which argued in part that the court should consider Mr. Kardos' affidavit and deposition testimony at the summary judgment stage, and that these documents could be admissible at trial under the Rules of Evidence and Civil Procedure.

On December 9, 2016, Defendant Jendoco Construction and Appellee Rockwell Automation each filed a motion to preclude Mr. Kardos' affidavit and

deposition testimony. That same day, Appellee Patterson Kelly filed a motion for summary judgment, which requested preclusion of Mr. Kardos' affidavit and deposition testimony, and further argued that Mr. Kardos failed to meet his burden of product identification. On December 12, 2016, Appellee Armstrong Pumps, Inc., filed a motion to join all preclusion motions filed by other Defendants regarding Mr. Kardos' affidavit and deposition testimony. That same day, the court entered an order that precluded Appellant from using Mr. Kardos' affidavit and deposition testimony in response and opposition to any party's motion for summary judgment.

On August 9, 2017, the court granted summary judgment in favor of Appellees Armstrong Pumps, Inc., Fairbanks, Flowserve, Hammond Valve Company, Ingersoll-Rand, and Patterson Kelly. The court granted summary judgment in favor of Appellees Rockwell Automation and Square D on August 18, 2017. The case proceeded to trial against the remaining Defendants, all of whom eventually settled. The final orders to settle, discontinue, and end were entered on December 6, 2017, which effectively resolved all the remaining claims against the remaining parties. On January 2, 2018, Appellant timely filed a notice of appeal challenging the earlier preclusion and summary judgment orders. The court ordered Appellant, on January 9, 2018, to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely filed a Rule 1925(b) statement on January 29, 2018.

Appellant raises the following issues for our review:

> WAS THE AFFIDAVIT AND DEPOSITION OF NICHOLAS KARDOS PROPER EVIDENCE TO BE CONSIDERED BY THE TRIAL COURT IN RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT?
>
> WAS THE DEPOSITION OF NICHOLAS KARDOS ADMISSIBLE AT TRIAL PURSUANT TO PENNSYLVANIA RULE OF EVIDENCE 804(B)(1) AND PENNSYLVANIA RULE OF CIVIL PROCEDURE 4020(A)(3)?
>
> DID THE TRIAL COURT'S RULING OF EXCLUDING THE THREE-DAY DEPOSITION OF A PLAINTIFF DYING FROM MESOTHELIOMA VIOLATE THE OPEN COURT AND REMEDIES CLAUSE OF PA. CONST. ART. I, § [11] AND THE DUE PROCESS AND EQUAL PROTECTION CLAUSES OF THE PENNSYLVANIA CONSTITUTION AND PUBLIC POLICY?

(Appellant's Brief at 7).

In her first issue, Appellant argues the Rules of Civil Procedure allow the court to consider depositions and affidavits during summary judgment proceedings, even when these documents would be inadmissible hearsay at trial. Appellant contends the use of Mr. Kardos' deposition, where he testified consistently with his affidavit, was proper in this context and expected under the Rules of Civil Procedure. Appellant submits Mr. Kardos was the most appropriate person to speak about his work and asbestos exposure because he had direct and independent knowledge, and this first-hand knowledge weighed in favor of consideration at the summary judgment stage.

In her second issue, Appellant argues Mr. Kardos' deposition falls under the Rule 804(b)(1) exception to hearsay, as Mr. Kardos is unavailable due to his death, he testified during a lawful deposition, and Appellees had the

opportunity to cross-examine Mr. Kardos, even though they might not be fully satisfied with their cross-examination. Appellant posits not all parties must be present at a deposition to qualify under Rule 804(b)(1), only that the parties had an opportunity to attend. Appellant continues Appellees' counsel were all present at Mr. Kardos' deposition, and the decision of some attorneys to refrain from asking questions of Mr. Kardos does not call for the exclusion of his deposition testimony. Appellant insists the civil standard under Rule 804(b)(1) is plainly an opportunity to cross-examine, while the criminal standard under Rule 804(b)(1) provides for a full and fair opportunity to cross-examine. Appellant asserts Mr. Kardos attended three full days of deposition and was available to all Appellees' counsel.

Appellant further argues Mr. Kardos' deposition is admissible at trial under Rule 4020(a)(3), which allows for the admission of depositions if the court finds it is in the interests of justice and exceptional circumstances exist. Appellant maintains Mr. Kardos gave substantially complete testimony on his exposure to asbestos from which a jury could rule in Appellant's favor. Appellant contends at the very least, the court should have permitted the use of the deposition against those Appellees who had concluded their cross-examination of Mr. Kardos.

In her final issue, Appellant argues the preclusion of Mr. Kardos' affidavit and deposition violates the Open Court and Remedies Clause of the Pennsylvania Constitution as well as public policy, because the court denied

Mr. Kardos and Appellant a remedy and set a precedent that could allow future defendants to delay or manipulate depositions to their ultimate advantage. Appellant concludes this Court should reverse the court's entry of summary judgment, remand for the court to consider Mr. Kardos' affidavit and deposition testimony at the summary judgment stage, and declare his deposition testimony admissible at trial. We agree in part.

Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. Mee v. Safeco Ins. Co. of America, 908 A.2d 344, 347 (Pa.Super. 2006).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

Miller v. Sacred Heart Hospital, 753 A.2d 829, 832 (Pa.Super. 2000) (internal citations and quotation marks omitted). Our scope of review is plenary. Pappas v. Asbel, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001), cert. denied, 536 U.S. 938, 122 S.Ct. 2618, 153 L.Ed.2d 802 (2002). In reviewing a trial court's grant of summary judgment,

> [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is

no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

Chenot v. A.P. Green Services, Inc., 895 A.2d 55, 61 (Pa.Super. 2006) (internal citations and quotation marks omitted) (emphasis added).

In an asbestos case, the plaintiff must present sufficient evidence establishing product identification to survive a summary judgment motion. Eckenrod v. GAF Corp., 544 A.2d 50, 52 (Pa.Super. 1988), appeal denied, 520 Pa. 605, 553 A.2d 968 (1988). That is, "[the] plaintiff must establish that the injuries were caused by a product of a particular manufacturer or supplier." Vanaman v. DAP, Inc., 966 A.2d 603, 607 (Pa.Super. 2009) (en banc). In other words, the plaintiff must present some evidence that he

inhaled asbestos fibers shed by the specific manufacturer's product. Gutteridge v. A.P. Green Services, Inc., 804 A.2d 643, 652 (Pa.Super. 2002), appeal denied, 574 Pa. 748, 829 A.2d 1158 (2003). As a result, the plaintiff must do more than just show the mere presence of asbestos in the workplace. Lonasco v. A-Best Products Co., 757 A.2d 367, 376 (Pa.Super. 2000), appeal denied, 566 Pa. 645, 781 A.2d 145 (2001). Instead, the plaintiff must prove he worked in the vicinity of a specific manufacturer's product. Id.

When evaluating the plaintiff's evidence in asbestos cases at the summary judgment stage, Pennsylvania courts use the "frequency, regularity, and proximity" test established in Eckenrod. Gregg v. V-J Auto Parts, Co., 596 Pa. 274, 292, 943 A.2d 216, 227 (2007). In Gregg, our Supreme Court adopted the Eckenrod standard and held that courts should make a reasoned assessment of whether, in light of the evidence on the frequency, regularity, and proximity of a plaintiff's alleged exposure, a jury could draw a sufficient causal connection between the defendant's product and the asserted injury. Id. at 290, 942 A.2d at 227. Therefore, the relevant inquiry under a manufacturer's motion for summary judgment is "whether [a] plaintiff has pointed to sufficient material facts in the record to indicate that there is a genuine issue of material fact as to the causation of decedent's disease by the product of each particular defendant." Vanaman, supra at 607. See also Rost v. Ford Company, 637 Pa. 625, 151 A.3d 1032 (2016) (emphasizing

that "frequent, regular, and proximate" test in this context requires evidence of exposure sufficient to allow jury to infer causal connection between exposure to asbestos-containing products and development of mesothelioma).

Eckenrod, however, is not a rigid test that sets an absolute threshold required to support liability. Gregg, supra at 290, 943 A.2d at 225. Rather, courts should apply Eckenrod in an evaluative fashion, in a way tailored to the facts and circumstances of the case. Linster v. Allied Signal, Inc., 21 A.3d 220, 224 (Pa.Super. 2011), appeal denied, 614 Pa. 714, 38 A.3d 826 (2012). Application of the test becomes less stringent where the plaintiff produces specific evidence of exposure to a defendant's product. Id. Similarly, in cases involving mesothelioma, the frequency and regularity requirements should become "less cumbersome." Id. A plaintiff cannot survive summary judgment, however, if a jury would need to speculate to find in plaintiff's favor. Krauss v. Trane U.S. Inc., 104 A.3d 556, 568 (Pa.Super. 2014).

Regarding summary judgment, the Pennsylvania Rules of Civil Procedure provide:

> Rule 1035.1. Motion for Summary Judgment. Definition
>
> As used in Rule 1035.1 et seq., "record" includes any
>
> (1) pleadings,
>
> (2) depositions, answers to interrogatories, admissions and

affidavits, and

> Note: See Definition Rule 76 for the definition of "affidavit." See Rule 1035.4 governing affidavits supporting or defending a motion for summary judgment.

(3) reports signed by an expert witness that would, if filed, comply with Rule 4003.5(a)(1), whether or not the reports have been produced in response to interrogatories.

Pa.R.C.P. 1035.1.

Rule 1035.2. Motion

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1)  whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2)  if, after completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

> Note: Rule 1035.2 sets forth the general principle that a motion for summary judgment is based on an evidentiary record which entitles the moving party to judgment as a matter of law.

*    *    *

Pa.R.C.P. 1035.2.

Rule 1035.3. Response.  Judgment for Failure to Respond

(a) Except as provided in subdivision (e), the adverse party

may not rest upon the mere allegations or denials of the pleadings but must file a response within thirty days after service of the motion identifying

> (1)    one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion, or

> (2)    evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced.

*    *    *

(c) The court may rule upon the motion for judgment or permit affidavits to be obtained, depositions to be taken or other discovery to be had or make such other order as is just.

Pa.R.C.P. 1035.3(a), (c).

> Rule 1035.4. Affidavits
>
> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the signer is competent to testify to the matters stated therein. Verified or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.    The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

Pa.R.C.P. 1035.4.  An affidavit is defined as "a statement in writing of a fact or facts, signed by the person making it, that either (1) is sworn to or affirmed before an officer authorized by law to administer oaths, or before a particular officer or individual designated by law as one before whom it may be taken, and officially certified to in the case of an officer under seal of office, or (2) is

unsworn and contains a statement that it is made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities[.]" Pa.R.C.P. 76.

Supporting affidavits in response to a motion for summary judgment are acceptable as proof of facts. Phaff v. Gerner, 451 Pa. 146, 150, 303 A.2d 826, 829 (1973) (discussing expired Pa.R.C.P. 1035(d), which contains substantially similar language as in current Rule 1035.4). Cf. Welsh v. National Railroad Passenger Corporation, 154 A.3d 386 (Pa.Super. 2017), appeal denied, 641 Pa. 514, 168 A.3d 1283 (2017) (holding trial court properly refused to consider, at summary judgment stage, signed but unsworn statements, which plaintiffs asserted were affidavits, because they did not conform to definition of "affidavit" in Rule 76).

A nonmoving party can, however, respond to a motion for summary judgment by relying solely on a proper affidavit to create a genuine issue of material fact, i.e., a credibility question for the jury. Burger v. Owens Illinois, Inc., 966 A.2d 611, 620 (Pa.Super. 2009) (holding trial court erred in refusing to consider non-movant's affidavit where affidavit was consistent with deposition testimony). A party can file a proper affidavit to supplement the record in order to oppose summary judgment, but the trial court may disregard the affidavit if the affidavit contradicts the party's prior testimony, which makes the affidavit inherently unreliable. Id.

"The admissibility of evidence is a matter addressed to the sound

discretion of the trial court and should not be overturned absent an abuse of discretion." Education Resources Institute, Inc. v. Cole, 827 A.2d 493, 499 (Pa.Super. 2003), appeal denied, 577 Pa. 721, 847 A.2d 1286 (2004) (quoting Delpopolo v. Nemetz, 710 A.2d 92, 94 (Pa.Super. 1998)).

Pennsylvania Rule of Evidence 801 defines hearsay as follows:

Rule 801.  Definitions That Apply to This Article

(a)    Statement.  "Statement" means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion.

(b)    Declarant.  "Declarant" means the person who made the statement.

(c)    Hearsay.  "Hearsay" means a statement that

(1)    the declarant does not make while testifying at the current trial or hearing; and

(2)    a party offers in evidence to prove the truth of the matter asserted in the statement.

Pa.R.E. 801.  Generally, hearsay is inadmissible.  Pa.R.E. 802.

Rule 804 provides in relevant part as follows:

Rule 804.    Exceptions to the Rule Against Hearsay When the Declarant is Unavailable as a Witness

(a)    Criteria for Being Unavailable.  A declarant is considered to be unavailable as a witness if the declarant:

*    *    *

(4)    cannot be present or testify at the trial or hearing because of death...[.]

*    *    *

- 16 -

(b)    The Exceptions.  The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:

(1)    Former testimony.  Testimony that:

(A)    was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and

(B)    is now offered against a party who had or, in a civil case, whose predecessor in interest had  an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Pa.R.E. 804(a)(4), (b) (emphasis added).

The Pennsylvania Rules of Civil Procedure allow a non-movant to use hearsay in opposition to a motion for summary judgment.  Petrina v. Allied Glove Corp., 46 A.3d 795, 799 (Pa.Super. 2012).  See also Pa.R.C.P. 1035.1, 1035.3.  A trial court should consider purported hearsay presented by a non-movant at the summary judgment stage if the non-movant can provide a plausible avenue for the admission at trial of the hearsay.  Petrina, supra at 799.

The Rules of Civil Procedure allow the use of deposition testimony at trial:

Rule 4020.  Use of Depositions at Trial

(a) At the trial, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had notice thereof if required, in accordance with any one of the following provisions:

* * *

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds

(a) that the witness is dead[.]

Pa.R.C.P. 4020(a)(3)(a). Depositions are generally admissible when otherwise permitted under the rules of evidence. DeArmitt v. New York Life Ins. Co., 73 A.3d 578, 591 (Pa.Super. 2013). Depositions are sufficient lawful proceedings, which warrant admission at trial when the deponent is unavailable and cannot testify. Collura v. L & E Concrete Pumping, Inc., 686 A.2d 392, 396 n.3 (Pa.Super. 1996). Persuasive cases from other jurisdictions demonstrate depositions, which are unfinished due to the deponent's illness or death, are admissible at the summary judgment and trial stages. See Derewecki v. Pennsylvania R.R. Co., 353 F.2d 436 (3d Cir. 1965) (holding court properly admitted deceased employee's deposition testimony at trial, although second day of deposition was unfinished due to employee's illness, where defendant previously had opportunity to cross-examine employee and exclusion of deposition testimony would have severely prejudiced plaintiff); Duttle v. Bandler & Kass, 127 F.R.D. 46 (S.D.N.Y. 1989) (holding deposition of deceased plaintiffs' witness is allowable at trial, where exclusion of testimony at trial would substantially harm plaintiffs' case; although defendants did not cross-examine witness, defendants could mitigate prejudice by stipulating to certain facts at trial); Bank of Montreal

v. Estate of Antoine, 86 So.3d 1262 (Fla. Dist. Ct. App. 2012) (citing to Derewecki, supra) (holding trial court erred in excluding unfinished deposition testimony of deceased co-defendant at trial even though living co-defendant did not have opportunity to cross-examine, because prejudice to living co-defendant was not substantial); Farmer v. Nostrand Ave. Meat and Poultry, 831 N.Y.S.2d 443 (N.Y. App. Div. 2007) (holding trial court erred in excluding decedent's deposition at summary judgment stage, where defendant had ample opportunity to test facts and veracity of decedent; while defendant could have asked more questions, this assertion alone did not warrant preclusion of entire deposition testimony).

Instantly, doctors diagnosed Mr. Kardos with mesothelioma in January 2016; and Appellant and Mr. Kardos filed a complaint against numerous manufacturers. Appellees filed motions for summary judgment based on lack of product identification. After a jobsite inspection, Mr. Kardos executed an affidavit, and Defendants noticed him for deposition. Defendants and Appellees cross-examined Mr. Kardos for three days; Appellees Fairbanks, Hammond Valve Company, and Patterson Kelly attended the deposition but did not question Mr. Kardos. No party noticed Mr. Kardos for a fourth day of deposition. Mr. Kardos died eight days after the last day of deposition. Defendant Jendoco Construction and Appellees Rockwell Automation, Patterson Kelly, and Armstrong Pumps, Inc., all filed motions to preclude the use of Mr. Kardos' affidavit and deposition testimony, which the court granted

globally. The court subsequently granted summary judgment in favor of Appellees.

Here, the Rules of Civil Procedure explicitly allow Mr. Kardos' affidavit and deposition testimony to be part of a record for summary judgment proceedings. See Pa.R.C.P. 1035.1(2); Burger, supra. Regarding the affidavit, Paragraph 9 contains a statement that Mr. Kardos signed the document subject to the penalties of Section 4904, as required for consideration during summary judgment. See Pa.R.C.P. 76, 1035.1, 1035.4. Mr. Kardos had direct personal knowledge of the statement of facts contained within the affidavit. See Pa.R.C.P. 1035.4. Further, Mr. Kardos' affidavit was consistent with his deposition testimony, so the court had no reason to reject the affidavit as inherently unreliable. See Burger, supra. Therefore, Mr. Kardos' affidavit conformed to the Rules of Civil Procedure and was an acceptable proof of fact for purposes of summary judgment. We conclude the court improperly precluded the use of the affidavit during summary judgment proceedings. See Pa.R.C.P. 1035.1-1035.4; Phaff, supra; Burger, supra; Education Resources Institute, Inc., supra.

Mr. Kardos' deposition consisted solely of three days of cross-examination by Defendants and Appellees. Even if the deposition testimony is hearsay, Appellant as a non-movant is entitled to use hearsay in opposition to Appellees' motions for summary judgment. See Petrina, supra. Moreover, Appellant provided a plausible avenue for admission of the

deposition testimony at trial, through Rule 804. See id.; Pa.R.E. 804(b)(1)(B) (allowing for use of deposition testimony of unavailable witness if "offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination"). Rule 804(b)(1)(B) merely required Appellees to have the opportunity to develop the testimony. See id.

Further, we reject Appellees' attempts to analogize the current case to Sutch v. Roxborough Memorial Hospital, 142 A.3d 38 (Pa.Super. 2016), appeal denied, 640 Pa. 378, 163 A.3d 399 (2016). In Sutch, we held a defense expert's trial testimony, which violated a court order against discussing the decedent's smoking history, could not be used against the defense attorney at a subsequent civil contempt hearing. Id. at 77. We stated the expert's trial testimony was hearsay without an exception under the Rules of Evidence, because the defense attorney, against whom the testimony would be used, was not given any opportunity to cross-examine her expert when his testimony was first challenged. Id. The contempt hearing occurred two years later, and the trial court had not given the defense attorney any opportunity during trial to expose her expert's potential bias and reasons for the evasive testimony he gave when the trial court questioned the expert about the violation during trial. Id.

Here, Defendants and Appellees cross-examined Mr. Kardos for three solid days of deposition. Importantly, after the second day of deposition,

Defendants and Appellees noticed Mr. Kardos for a third day of deposition, which occurred two days later. From the end of the third day of deposition until Mr. Kardos' death over a week later, no party noticed a fourth day of deposition or indicated any unfinished business. Defendants and Appellees deposed Mr. Kardos for the specific purpose of the current litigation and focused their questioning on product identification. Unlike Sutch, Appellees had the opportunity to cross-examine Mr. Kardos for three days and could have noticed Mr. Kardos for a fourth day of deposition if necessary. They did not do so before his death. Therefore, Mr. Kardos' deposition testimony arguably meets the hearsay exception under Rule 804(b)(1)(B). See Pa.R.E. 804(b)(1)(B).

Appellees all attended Mr. Kardos' deposition with an opportunity to question him; Mr. Kardos' death and the hearsay exception combined reasonably to allow the admission of the deposition testimony at trial. See Pa.R.C.P. 4020(a)(3)(a); DeArmitt, supra; Collura, supra. Because Mr. Kardos' deposition testimony arguably falls under a hearsay exception and could be allowable at trial, the court should have consider the testimony at the summary judgment stage. See Petrina, supra. Therefore, we conclude the court erred when it precluded the use of Mr. Kardos' deposition testimony during summary judgment proceedings. See Education Resources Institute, Inc., supra. The preclusion of Mr. Kardos' testimony resulted in significant prejudice to Appellant, as she needed this testimony to oppose

summary judgment on the ground of lack of product identification. See Eckenrod, supra. See also Derewecki, supra; Farmer, supra.

Based on the foregoing, we hold Appellant as non-movant can use Mr. Kardos' properly executed affidavit, signed subject to the penalties of Section 4904, as part of the record in opposition to Appellees' motions for summary judgment, because it is not inherently unreliable. We further hold Appellant can use Mr. Kardos' deposition testimony to oppose Appellees' summary judgment motions, where Appellees had the opportunity to cross-examine Mr. Kardos, who later became unavailable due to his death, and the deposition testimony meets a hearsay exception. Accordingly, we vacate the orders entering summary judgment in favor of Appellees, reverse the order precluding the use of Mr. Kardos' affidavit and deposition testimony in opposition to Appellees' summary judgment motions, and remand for further proceedings.[2]

Orders entering summary judgment vacated; preclusion order reversed; case remanded for further proceedings. Jurisdiction is relinquished.

---

[2] Due to our disposition, we decline to address Appellant's third issue on appeal, referring to constitutional violations, where Pennsylvania law provides "a restraining principle that counsels against reaching a constitutional question if a non-constitutional ground for [a] decision is available." See Com., Dept. of Transp. v. Taylor, 576 Pa. 622, 633, 841 A.2d 108, 114 (2004); Commonwealth v. Farabaugh, 136 A.3d 995, 1001 (Pa.Super. 2016), appeal denied, 643 Pa. 140, 172 A.3d 1115 (2017).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/28/2019</u>